UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

———————————————————————————

KLINT NEIMAN,                                          :
        Plaintiff,                                :
                                     :
        v.                                        :          No. 5:24-cv-0073
                                     :
BOROUGH OF WYOMISSING;                                 :
BOROUGH OF WEST READING;                               :
CORY MOSER, *A MEMBER OF THE*                          :
*WYOMISSING POLICE DEPARTMENT*;                        :
OFFICER A, *A MEMBER OF THE*                           :
*WYOMISSING POLICE DEPARTMENT*; and                   :
EDWARD DELOZIER, *A MEMBER OF THE*                     :
*WEST READING POLICE DEPARTMENT*;                      :
        Defendants                                :

———————————————————————————

**O P I N I O N**
**Defs. Borough of Wyomissing and Moser Motion to Dismiss, ECF No. 13 - Granted**
**Defs. Borough of West Reading and DeLozier Motion to Dismiss, ECF No. 16 - Granted**

**Joseph F. Leeson, Jr.**                                                    **May 16, 2024**
**United States District Judge**

I.      **INTRODUCTION**

      This case arises from conduct occurring between August and December 2021 after

Plaintiff Klint Neiman failed to abide by the Wyomissing Area School District's face-mask

policy due to a medical exemption and was subsequently restricted from being on any of the

grounds of the Wyomissing Area School District.  In responding to calls from the school that

Neiman was trespassing, the Wyomissing Borough Police Department and West Reading Police

Department also became entangled in the events underlying the Amended Complaint.  Both

boroughs, including its named officers, have filed motions to dismiss, which for the reasons set

forth below are granted.

## II.   BACKGROUND

### A.   Factual Allegations

On August 9, 2021, the Wyomissing Area School District ("WASD") enacted a policy requiring face coverings for all students, employees, and visitors while indoors at all WASD schools.  Am. Compl. ¶ 19 and Ex. B, ECF No. 9.[1]  This policy did not contain any exemptions.  *See id.*  On August 24, 2021, Neiman went to the Wyomissing Hills Elementary Center where his two children were students.  *Id.* ¶ 20.  While outside, Neiman informed the school Principal he had an exemption letter for the face mask requirement.[2]  *Id.* ¶ 21 and Ex. A (discussing an exemption to the state-wide mandate).

A week later, on August 30, 2021, Neiman returned to the school without wearing a face mask.  *Id.* ¶ 23.  The WASD school officer told Neiman that he was required to wear a face mask to be in the building.  *Id.* ¶ 23.  Neiman informed the WASD officer that he had a disability and offered to retrieve his doctor's note saying that he could not wear a face mask for medical

---

[1]     WASD's face-mask policy was withdrawn on June 14, 2022.  *See* Am. Compl. ¶ 63.

[2]     Although the WASD policy did not contain any exemptions, there was also a state-wide mandate requiring that "every individual, age two and older, in the Commonwealth of Pennsylvania shall wear a face covering when [i]ndoors or in an enclosed space, where another person or persons who are not members of the individual's household are present in the same space, irrespective of physical distance."  *See* Updated Order of the Secretary of the Pennsylvania Department of Health Requiring Universal Face Coverings dated November 18, 2020 at https://content.civicplus.com/api/assets/pa-statecollege/fff541e8-b321-4878-917b-7412e429075d/20201117-soh-universal-face-coverings-order-update.pdf?sq=a4e21f66-237a-138d-2bb7-4d934f72dde7&scope=all (last accessed May 13, 2024) (hereinafter "state-wide mandate").  Additionally, on August 31, 2021, Pennsylvania's Acting Secretary of Health issued an Order requiring face coverings be worn in all schools.  *See* Order of the Acting Secretary of the Pennsylvania Department of Health Directing Face Coverings in School Entities, effective September 7, 2021, at https://www.athensasd.k12.pa.us/Downloads/September%206th%20Face%20Covering%20Update4.pdf (last accessed May 13, 2024) (hereinafter "state-wide school mandate").  Both policies include enumerated exceptions.  *See id.*

reasons.[3]  *Id.* ¶ 24.  Neither the WASD officer, nor any school employee, asked to see Neiman's

doctor's note, nor offered him an accommodation.  *Id.* ¶ 27.  The Vice Principal told Neiman to

wait in the lobby because he was not wearing a facemask, but as he walked into the lobby, the

Principal told Neiman he had to wait outside if he was not wearing a face mask.  *Id.* ¶¶ 25-26.

After the WASD informed Neiman that they had contacted the Wyomissing police, Neiman left

the building.  *Id.* ¶ 28.

Defendant Wyomissing Police Officer Moser arrived and allegedly detained Neiman

outside while a second Wyomissing Police Officer, identified as Officer A, went into the school.

*Id.*  During this time, the Vice Principal came outside and handed Neiman his son's school

papers.  *Id.*  Neiman asked if he could leave, but Officer Moser said: "No you are not free to go!"

*Id.*  Five minutes later, Officer A returned and spoke with Officer Moser, after which they told

Neiman he was free to leave.  *Id.*

Shortly thereafter, Neiman received a letter dated September 1, 2021, from the WASD

Superintendent[4] summarizing the WASD face-mask policy and the events on August 24, 2021,

and August 30, 2021.  *See* Am. Compl. ¶ 30 and Ex. D.  As to August 30, 2021, the letter

explains that Neiman was inside the building without a face mask, as the WASD policy requires,

but declined a mask and was "asked to leave the building."  *Id.*  Neiman "failed to leave the

office" and the WASD Officer "again directed" him to leave.  Although Neiman left the office,

he remained in the vestibule of the building.  *Id.*  Neiman was "then asked" to wait outside the

---

[3]     The doctor's note states that Neiman is "exempt from a face covering" and that,
generally, a person is exempt from the state-wide mandate if wearing a face covering would
either cause or exacerbate a medical condition, including "respiratory issues, . . . a mental health
condition or a disability."  Am. Compl. ¶ 58 and Ex. A (citing Section 3 of the state-wide
mandate).
[4]     Neiman alleges that the Superintendent is the chief policy maker of the WASD.  *See* Am.
Compl. ¶ 31.

building but "again refused." *Id.*  It was only after the WASD officer told him that the

Wyomissing Police Department had been contacted and were responding that Neiman left the

building.  *Id.*  The letter then states:

> Due to your repeated refusal to follow the District's face covering requirement, and
> your failure to promptly leave the building per the direction provided to you by the
> District's Police Officer, you are immediately restricted from being on any of the
> grounds of the Wyomissing Area School District without prior, written approval by
> a District Administrator.
> . . .
> Failure to comply with the direction of this communication will result in an
> immediate contact to the appropriate police department.  Following such a call to
> the police, the District will seek charges of defiant trespass.

*Id.* (emphasis in original).

Neiman contacted the Wyomissing Police Chief about the letter, explaining that he had a

disability and was denied an opportunity to submit supporting medical documentation.  *Id.* ¶ 32.

The Chief advised Neiman that he was enforcing the no-trespassing ban.  *Id.*  Neiman alleges the

Police Chief is the ultimate policy maker for the Wyomissing Police Department and that he

communicated his policy with the Chief of Police of the West Reading Police Department.  *Id.*

Sometime thereafter, Neiman contacted the WASD District Office asking whether he

could attend his son's football events.  *Id.* ¶ 34.  Neiman's request was denied, but he was

advised he could watch the events from the public sidewalks.  *Id.* ¶ 36.  He subsequently

withdrew his children from the WASD school, but remained a WASD resident.  *Id.* ¶ 37.

School district residents, according to signs posted on WASD school playgrounds, were

generally permitted to access the playgrounds after school hours.  *Id.* ¶ 39.  At approximately

4:37 p.m. on December 9, 2021, Neiman and his children were at a WASD playground.  *Id.* ¶¶

40, 44.  Around 5:00 p.m., Defendant Officer DeLozier of the West Reading Police Department

approached Neiman and inquired: "Did you resolve your situation with the school?"  *Id.* ¶ 41.

Neiman responded "No." *Id.* Officer DeLozier advised Neiman that he had received a call complaining that Neiman was on WASD property and should be sent home. *Id.* Officer DeLozier informed Neiman that he would contact the WASD the following day to determine whether they wanted to press charges. *Id.* Approximately a minute later, Neiman left the WASD playground. *Id.* ¶¶ 40, 44. Charges of defiant trespass pursuant to 18 Pa. C.S. § 3503(b)(1)(i) and (b)(1)(v) were filed later that month and mailed to Neiman. *Id.* ¶ 45 and Ex. K. Neiman was processed on the charges and attended several criminal proceedings. *Id.* ¶¶ 45-46 (alleging that Neiman had to have a mugshot taken and be fingerprinted). On September 22, 2022, following trial, Neiman was found not guilty. *Id.* ¶¶ 50, 64 and Ex. N.

### B.     Procedural History

Neiman commenced a civil action against the Borough of Wyomissing, the Borough of West Reading, as well as the Wyomissing Police Department and the Borough of West Reading Police Department, by filing a Summons in the Court of Common Pleas of Berks County on August 31, 2023. The Summons was served on October 16, 2023, prior to the expiration of the statute of limitations. After the expiration of the statute of limitations,[5] a state-court complaint was filed against the same defendants. Three days later, on January 5, 2024, the action was removed to this Court. The parties, by and through their counsel, met to discuss an anticipated motion to dismiss and agreed that in lieu of filing a motion, Neiman could file an amended complaint to cure the identified defects. *See* ECF No. 5. On February 12, 2024, an Amended Complaint was filed. The Amended Complaint names as Defendants: the Borough of Wyomissing, the Borough of West Reading and, for the first time, Cory Moser, a member of the

---

[5]      There is no suggestion that the state-court complaint is untimely or that it does not relate-back to when the summons was filed.

Wyomissing Police Department; Officer A, a member of the Wyomissing Police Department; and Edward DeLozier, a member of the West Reading Police Department.

The Amended Complaint, filed pursuant to 42 U.S.C. § 1983, includes one count against all Defendants for a violation of Neiman's Fourth and Fourteenth Amendment rights.  Am. Compl. ¶¶ 73-82.  Neiman claims that he experienced a discriminatory, disability hostile environment at the WASD school, which allegedly resulted in Neiman being ordered to leave WASD school property and in his subsequent detention by the Wyomissing police.  *Id.* ¶¶ 75, 77. Neiman contends that he was prevented from providing proof of his disability by the Wyomissing Police Department and from engaging in due process to enforce his rights as a disabled person.  *Id.* ¶ 76.  Neiman claims that his detention prevented him from going in the school to speak with someone about his disability in violation of the First, Fourth, and Fourteenth Amendments.  *Id.* ¶ 78.  He asserts that his detention and arrest by the West Reading Police also violated his First, Fourth, and Fourteenth Amendment rights.  *Id.* ¶ 79.  Neiman alleges that the decision to violate his rights was made knowingly by policymakers.  *Id.* ¶ 81.

Defendants Borough of Wyomissing and Officer Cory Moser (collectively "Wyomissing Defendants") filed a Motion to Dismiss.  *See* Wyomissing Mot., ECF No. 13.  The Wyomissing Defendants submit that although neither the School District nor the Commonwealth Department of Health are parties in this action, the bulk of the Amended Complaint alleges discrimination centered around Neiman's dissatisfaction with the WASD and state-wide policies regarding facial coverings, Neiman's claim of a medical exemption from both policies, and resulting claims of discrimination under the Americans With Disabilities Act ("ADA").  *Id.* 5-6.  The Wyomissing Defendants assert that the Borough is a separate legal entity from, and has no responsibility for, the school district.  *Id.* (citing 24 Pa. Stat. Ann. § 2-211).  Additionally, they

argue that Neiman's five-minute detention by Officer Moser while Officer A went inside to speak with school officials, who had contacted the police when Neiman refused to leave, about whether they wanted to prosecute was supported by probable cause and/or reasonable suspicion. *Id.* 9-10.  They argue that the Fourth Amendment claim should therefore be dismissed, along with the Fourteenth Amendment claim based on the same conduct.  *Id.*  The Wyomissing Defendants assert that Neiman's claim that he had a First Amendment right to enter a building after being told to leave is frivolous.  *Id.* 9.  They further argue that all claims against Officer Moser are barred by the statute of limitations because he was not named as a defendant until the Amended Complaint.  *Id.* 10-12.  Finally, they assert that because there are no facts demonstrating that a municipal policy or custom caused a constitutional violation, the Amended Complaint fails to state a cause of action for municipal liability.  *Id.* 12.

In opposition to the Wyomissing Defendants' Motion, Neiman argues that there was no reasonable basis for Officer Moser to detain him because he had medical documentation exempting him from wearing a face mask.  *See* Wyomissing Opp. 14-15, ECF No. 21.  In response to the statute of limitations defense, Neiman says he will stipulate that the claims against Officer Moser and Officer A are in their official-capacities only and because they are employed by the Wyomissing Borough, which was already a party to the suit, such official-capacity claims should not be dismissed.  *Id.* 15-16.  Finally, Neiman asserts that the Wyomissing Police Chief was a policymaker and the Chief's decision to enforce the WASD no-trespass letter, which discriminated against Neiman on the basis of a disability, is sufficient to state a *Monell* claim.  *Id.* 16-17.

Defendants Borough of West Reading and Officer Edward DeLozier (collectively "West Reading Defendants") also filed a Motion to Dismiss.  *See* West Reading Mot. and Mem., ECF

No. 16-17.  The West Reading Defendants assert that the claims against Officer DeLozier are barred by the statute of limitations and must be dismissed.  *Id.* 7-9.  They contend that the Amended Complaint does not relate back to the original pleading because Officer DeLozier did not have notice of the action, nor did he know or should have known that but for a mistake of identity, he would have been named in the initial complaint.[6]  *Id.* (citing *Garvin v. City of Phila.*, 354 F.3d 215, 220-22 (3d Cir. 2003) (holding that "an amended complaint will not relate back if the plaintiff had been aware of the identity of the newly named parties when she filed her original complaint and simply chose not to sue them at that time")).  The West Reading Defendants further argue that neither Officer DeLozier's one-minute interaction with Neiman nor the mailed summons constituted a "seizure."  *Id.* 9-12.  Next, they assert that the Amended Complaint fails to identify any policy or custom of the West Reading Borough that might impose municipal liability.  *Id.* 12-14.  The West Reading Defendants contend that Neiman also fails to state a First Amendment claim because he has not demonstrated how his right to speech, association, press, or establishment or free exercise of religion was violated and any suggestion that the WASD restriction was retaliatory is irrelevant because WASD is not a party in the action.  *Id.* 14-15.  Finally, they argue that the Fourteenth Amendment claim fails as a matter of law because there is no discriminatory conduct alleged against Officer DeLozier, only that he knew about Neiman's medical circumstances.  *Id.* 15-16.

---

[6]     "Rule 15(c) can ameliorate the running of the statute of limitations on a claim by making the amended claim relate back to the original, timely filed complaint."  *Singletary v. Pa. Dep't of Corr.*, 266 F.3d 186, 193 (3d Cir. 2001); Fed. R. Civ. P. 15.  "The rationale of Rule 15(c) is that a party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide."  *Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 149 n.3 (1984).

Neiman opposes the West Reading Defendants' Motion.  *See* West Reading Opp., ECF No. 20.  Of note, he responds to the statute of limitations defense by stipulating to official-capacity claims, only, against Officer DeLozier, which he argues there was notice of because an official capacity-claim is the same as suing the Borough.  *Id.* 11-12.  Neiman's remaining arguments are all dependent on his suggestion that the Borough, through the Police Chief, adopted WASD's discriminatory policy.  *See id.* 12-20.

## III.   LEGAL STANDARDS

### A.     Motion to Dismiss, Rule 12(b)(6) - Review of Applicable Law

In rendering a decision on a motion to dismiss, this Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted).  Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim. *Id.* at 234 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 540, 555 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* (explaining that determining "whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense").  "[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take

judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007). *See also Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) ("In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (holding that "a document integral to or explicitly relied upon in the complaint may be considered" (internal quotations omitted)). The defendant bears the burden of demonstrating that a plaintiff has failed to state a claim upon which relief can be granted. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

### B.       Section 1983 claims - Review of Applicable Law

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). The first step for the court analyzing a claim under § 1983 "is to identify the exact contours of the underlying right said to have been violated." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998). The court must determine "whether the plaintiff has alleged a deprivation of a constitutional right at all." *See Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000) (quoting *Id.*). Section "1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (internal quotations omitted). A "defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior." *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). "Personal

involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity." *Id.*

### C.     *Monell* Claim - Review of Applicable Law

"Local governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was." *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009). "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'" *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). A plaintiff illustrates that a custom was the proximate cause of his injuries by demonstrating that the defendant "had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to his injury." *Id.* (internal quotations and alterations omitted). "Liability will be imposed when the policy or custom itself violates the Constitution or when the policy or custom, while not unconstitutional itself, is the 'moving force' behind the constitutional tort of one its employees." *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1027 (3d Cir. 1991). "[I]t is incumbent upon a plaintiff to

show that a policymaker is responsible either for the policy or, through acquiescence, for the custom." *Andrews*, 895 F.2d at 1480. *See also Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986) (holding that the municipality will be liable "[i]f the decision to adopt that particular course of action is properly made by that government's authorized decisionmakers" or "where action is directed by those who establish governmental policy").

### D.   Fourth Amendment - Review of Applicable Law

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. "Law enforcement officers do not violate the Fourth Amendment's prohibition of unreasonable seizures merely by approaching individuals on the street or in other public places and putting questions to them if they are willing to listen." *United States v. Drayton*, 536 U.S. 194, 200 (2002). "Even when law enforcement officers have no basis for suspecting a particular individual, they may pose questions, ask for identification . . . ." *Id.* at 201. Additionally, "an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). "Reasonable suspicion" is a less demanding standard than probable cause, but "the Fourth Amendment requires at least a minimal level of objective justification for making the stop." *Id.* ("The officer must be able to articulate more than an 'inchoate and unparticularized suspicion or 'hunch'' of criminal activity." (quoting *Terry v. Ohio*, 392 U.S. 1, 27 (1968))). In making reasonable-suspicion determinations, the courts "must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273-74 (2002); *United States v. Cortez*, 449 U.S. 411, 417-18 (1981) ("Based

upon that whole picture the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity."). "[T]he brevity of the invasion of the individual's Fourth Amendment interests is an important factor in determining whether the seizure is so minimally intrusive as to be justifiable on reasonable suspicion." *United States v. Place*, 462 U.S. 696, 709-10 (1983).  To determine whether there was probable cause to arrest, the courts consider "whether, at the moment the arrest was made, . . . the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [person] had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91 (1964).  The courts "look to the elements of the offense to determine whether an arrest was supported by probable cause." *Karns v. Shanahan*, 879 F.3d 504, 523 (3d Cir. 2018).

### E.     Fourteenth Amendment, Procedural Due Process – Review of Applicable Law

"The boundary between Fourth Amendment and Fourteenth Amendment claims is, at its core, temporal. The Fourth Amendment forbids a state from detaining an individual unless the state actor reasonably believes that the individual has committed a crime—that is, the Fourth Amendment forbids a detention without probable cause." *Halsey v. Pfeiffer*, 750 F.3d 273, 291 (3d Cir. 2014).  This protection extends only until trial, at which time the guarantee of due process of law protects defendants during and after trial.  *See id.*  "To state a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty, or property, and (2) the procedures available to him did not provide due process of law." *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006) (internal quotations

omitted). "Fundamentally, procedural due process requires notice and an opportunity to be heard." *Mancini v. Northampton Cty.*, 836 F.3d 308, 315 (3d Cir. 2016).

### F.     First Amendment – Review of Applicable Law

"The First Amendment generally prevents government from proscribing speech or even expressive conduct[7] because of disapproval of the ideas expressed." *R. A. V. v. St. Paul*, 505 U.S. 377, 382 (1992) (internal citations omitted). In deciding whether the plaintiff has a free speech right guaranteed by the First Amendment, "the court must determine whether defendant has created a forum, and if so, what type, i.e., was it 'public' or 'limited,' and if 'limited,' in what manner." *Gregoire v. Centennial Sch. Dist.*, 674 F. Supp. 172, 176-77 (E.D. Pa. 1987). To succeed on a claim that a plaintiff's arrest violated his first amendment free speech rights, the plaintiff must show that he was arrested without probable cause. *See Armes v. Philadelphia*, 706 F. Supp. 1156, 1163 (E.D. Pa. 1989).

## IV.   ANALYSIS

### A.     The individual-capacity claims against Officer DeLozier, Officer Moser, and Officer A are dismissed with prejudice, as are the official-capacity claims against Officer DeLozier and Officer Moser.

After the expiration of the two-year statute of limitations,[8] an Amended Complaint was filed naming, for the first time, Officer Moser, Officer A, and Officer DeLozier. In response to

---

[7]      "To be a protected form of expression, two elements must be satisfied: (1) the actor must "inten[d] to convey a particularized message," and (2) there must a high "likelihood . . . that the message would be understood by those who viewed it." *Spence v. Washington*, 418 U.S. 405, 410-11 (1974). The second element is trickier "because a viewer must be able to understand the message from the conduct alone." *Falcone*, 92 F.4th at 206 (stating that context matters).

[8]      "In actions under 42 U.S.C. § 1983, federal courts apply the state's statute of limitations for personal injury." *Sameric Corp. v. City of Phila.*, 142 F.3d 582, 599 (3d Cir. 1998). The statute of limitations for personal injury actions in Pennsylvania is two years. *See id.*; 42 Pa. C.S.A. § 5524. "A section 1983 cause of action accrues when the plaintiff knew or should have known of the injury upon which its action is based." *Sameric Corp.*, 142 F.3d at 599.

Defendants' arguments that the claims against Officer Moser and Officer DeLozier are barred by the statute of limitations, Neiman states he will stipulate that he sued Officer DeLozier, Officer Moser, and Officer A in their official capacities only. *See* Wyomissing Opp. 15 and n.8; West Reading Opp. 12. Accordingly, the claims against Officer DeLozier, Officer Moser, and Officer A in their individual capacities are dismissed with prejudice upon agreement.

The official-capacity claims against Officer DeLozier and Officer Moser are also dismissed because they are redundant of the claims against the Borough of West Reading and the Borough of Wyomissing. *See Cuvo v. De Biasi*, 169 F. App'x 688, 693 (3d Cir. 2006) (affirming dismissal of the claims against the officers in their official capacities as "redundant" because "a lawsuit against public officers in their official capacities is functionally a suit against the public entity that employs them" and the plaintiff also sued the Township). "There is no longer a need to bring official-capacity actions against local government officials, for under *Monell, supra*, local government units can be sued directly for damages and injunctive or declaratory relief." *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). *See also Satterfield v. Borough of Schuylkill Haven*, 12 F. Supp. 2d 423, 432 (E.D. Pa. 1998) (dismissing the official capacity claims and explaining: "[b]y bringing official capacity suits against the [individual] three Defendants and against the Borough itself, the Plaintiff has essentially named the Borough as a defendant four times"). The official-capacity claims against Officer DeLozier and Officer Moser are therefore dismissed with prejudice.[9]

---

[9] Even if the official capacity claims were not dismissed as redundant, they would be dismissed for failure to state a claim for the reasons set forth below. Accordingly, leave to amend would be futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) (holding that leave to amend "must be granted in the absence of undue delay, bad faith, dilatory motive, unfair prejudice, or *futility of amendment*").

**B.**     **The Fourth Amendment claims are dismissed with prejudice.**

There are several alleged seizures of Neiman.  The first occurred on August 30, 2021, when the Wyomissing Police responded to a call from the Wyomissing Hills Elementary Center and met Neiman just outside the school building.  Neiman alleges that he was "detained" upon the officers' arrival.  *See* Am. Compl. ¶¶ 28(A), 78.  However, there are insufficient factual allegations to support this conclusion as Neiman alleges merely that he spoke with the officers about being kicked out of the school and about his medical condition.  *See United States v. Mendenhall*, 446 U.S. 544, 553 (1980) ("We adhere to the view that a person is 'seized' only when, by means of physical force or a show of authority, his freedom of movement is restrained.  Only when such restraint is imposed is there any foundation whatever for invoking constitutional safeguards.").  While Officer Moser waited with Neiman outside, Officer A went inside the school and "[i]mmediately thereafter," the vice principal came out and handed Neiman his son's school papers.  *See* Am. Compl. ¶ 28(D).  Neiman asked Officer Moser if he could leave, but Officer Moser said: "No you are not free to go!"  *See id.* ¶ 28(E).  At this time, but not before, Neiman was seized.  *See Terry*, 392 U.S. at 19 n.16 ("Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred."); *Patrick v. Rodriguez*, No. 3:23-CV-00672, 2023 U.S. Dist. LEXIS 207486, at *22-23 (M.D. Pa. Nov. 20, 2023) (concluding Patrick was not seized when approached by three or more police officers who requested that he speak to them, but was seized when Patrick asked one of the officers if he was free to leave and was told he was not).

The seizure was justified by reasonable suspicion.  *See McFadden v. United States*, 814 F.2d 144, 147 (3d Cir. 1987) (finding that the police, who were summoned by hospital nurses when McFadden refused to leave the Hospital after visiting hours ended, "had at least an

16
051624

articulable suspicion that criminal activity was afoot and that McFadden was involved in it").
Specifically, the Wyomissing Police officers, who were contacted by school personnel after
Neiman refused to leave the school for not wearing a facemask despite being asked to do so, had
reasonable suspicion that Neiman was trespassing.  A person commits the crime of defiant
trespass under Pennsylvania law if, "knowing that he is not licensed or privileged to do so, he
enters or remains in any place as to which notice against trespass is given by: (i) actual
communication to the actor; . . . [or] (v) an actual communication to the actor to leave school
grounds as communicated by a school, center or program official, employee or agent or a law
enforcement officer. . . ."  18 Pa. C.S.A. §§ 3503(b)(1)(i), (v).  Additionally, only by speaking
with school personnel were the officers able to complete their investigation into such activity.
The investigatory detention, which was for "five minutes" until Officer A returned from inside
the school and met with Officer Moser, *see* Am. Compl. ¶ 28(F), lasted only as long as necessary
for the officers to complete their investigation.  *See Florida v. Royer*, 460 U.S. 491, 500 (1983)
(holding that "an investigative detention must be temporary and last no longer than is necessary
to effectuate the purpose of the stop"); *Place*, 462 U.S. at 709-10 ("Moreover, in assessing the
effect of the length of the detention, we take into account whether the police diligently pursue
their investigation).  The seizure by Wyomissing police was therefore not unreasonable and did
not violate Neiman's Fourth Amendment rights.

Neiman also alleges that his Fourth Amendment rights were violated when he was
"detained" and "arrested" by the West Reading Police.  *See* Am. Compl. ¶¶ 44, 79.  Neiman
alleges that he was "detained" by Officer DeLozier of the West Reading Police Department on
December 9, 2021, at the WASD playground.  However, Officer DeLozier simply spoke with
Neiman for approximately one minute, then Neiman left.  *See id.* ¶¶ 40-41, 44.  Accordingly,

Neiman was not seized on December 9, 2021, and his Fourth Amendment rights were not implicated, let alone violated, by Officer DeLozier's brief conversation with him. *See Drayton*, 536 U.S. at 200 ("Law enforcement officers do not violate the Fourth Amendment's prohibition of unreasonable seizures merely by approaching individuals on the street or in other public places and putting questions to them if they are willing to listen.").[10]

Officer DeLozier subsequently filed criminal charges of defiant trespass pursuant to 18 Pa. C.S. § 3503(b)(1)(i) and (b)(1)(v) and mailed them to Neiman. *See* Am. Compl. ¶ 45. Arguably, when Neiman was being processed on the charges, he was seized under the Fourth Amendment. *Cf. Black v. Montgomery Cty.*, 835 F.3d 358, 367 (3d Cir. 2016) (concluding that although Black was never incarcerated on charges, "she spent more than an hour being fingerprinted and photographed at a police station — and she was clearly not free to leave"), *with Macolino v. Twp. of Lower Moreland*, No. 18-1476, 2020 U.S. Dist. LEXIS 180195, at *18 (E.D. Pa. Sep. 30, 2020) (concluding that where there was no allegation the plaintiff was handcuffed, confined, held in custody, or otherwise prohibited from leaving the police station while he was being fingerprinted and photographed, there was no Fourth Amendment seizure); *Williams v. Lawrence Cty. Career & Tech. Ctr.*, No. 17-620, 2017 U.S. Dist. LEXIS 177498, at *14-15 (W.D. Pa. Oct. 26, 2017) (determining that although the plaintiff "was subject to processing and fingerprinting, was required to appear in court, was compelled to expend time and money preparing her case, and was forced to endure the prospect of going to trial," she was not arrested

---

[10]     Even if Neiman had been detained, such detention did not violate the Fourth Amendment because it was supported by reasonable suspicion. *See Briscoe v. Jackson*, 2 F. Supp. 3d 635, 643-44 (E.D. Pa. 2014) (concluding that the investigatory stop, which lasted between twenty and thirty-five minutes, was based upon reasonable suspicion and did not run afoul of the Fourth Amendment because the plaintiffs were present in a condemned property, where anyone was prohibited from inhabiting between the hours of 6:00 p.m. and 7:00 a.m., and a neighbor had called 911 to report a potential burglary in progress).

or held in custody, was able to travel freely except for when she was required to appear in court, and was therefore not seized within the meaning of the Fourth Amendment).  Regardless, the defiant trespass charges were supported by probable cause so there was no Fourth Amendment violation.  *See Deninno v. Municipality of Penn Hills*, 269 F. App'x 153, 158 (3d Cir. 2008) (The officer, who knew DeNinno was on another person's property, "quite reasonably concluded that he had probable cause to believe that DeNinno had committed trespass.").  As previously explained, a person is guilty of defiant trespass if, "knowing that he is not licensed or privileged to do so, he enters or remains in any place as to which notice against trespass is given by: (i) actual communication to the actor; . . . [or] (v) an actual communication to the actor to leave school grounds as communicated by a school, center or program official, employee or agent or a law enforcement officer. . . ."  18 Pa. C.S.A. §§ 3503(b)(1)(i), (v).  The WASD letter dated September 1, 2021, was "actual communication" to Neiman that he was not privileged to be on any WASD property and that the WASD would seek defiant trespass charges if Neiman failed to comply.  *See* Am. Compl. ¶ 30 and Ex. D.  Neiman acknowledges receipt of this letter, admitted to Officer DeLozier on December 9, 2021, that he had not resolved this issue with the school, and knew that the playground was WASD property.

Although Neiman suggests that the no-trespass ban was unlawful, he has failed to make the required showing.  "To establish the affirmative defense of Section 3503(c)(2),[11] a defendant must introduce evidence showing both that the premises were open to the public at the time of entry and that he complied with all lawful conditions imposed upon access."  *Radich v. Goode*, 886 F.2d 1391, 1396 (3d Cir. 1989).  "[A]ssuming arguendo that . . . the arresting officer must

---

[11]     It is an affirmative defense to prosecution for defiant trespass that "the premises were at the time open to members of the public and the actor complied with all lawful conditions imposed on access to or remaining in the premises."  18 Pa. C.S.A. § 3503(c)(2).

consider the statute's affirmative defense, to prove that probable cause was lacking, [the plaintiff] must demonstrate that the arresting police officer, acting reasonably, would have believed: (1) that the property was 'open to the public,' and (2) that the [plaintiff was] complying with lawful conditions, or that the conditions imposed upon access were unlawful." *Id.* Neiman suggests that the no-trespass ban was unlawful because he had a medical exemption to the mask mandate. Neiman's exemption was to the state-wide mandate and school-wide mandate only, however, not to the WASD policy requiring facemasks, as there were no exemptions under the WASD policy.[12] Moreover, the lawfulness of the mandate and/or the WASD's actions in issuing the letter are not readily discernable as unlawful, if at all. *See Radich*, 886 F.2d at 1396-98 (concluding that the legality of the condition imposed by the owners of a parking lot prohibiting protestors to come onto the lot was "not readily discernable to a police officer making arrests or city official formulating a policy to enforce private trespass rights"). "A prudent officer, in the course of determining whether [a suspect] had committed an offense . . . should not have been required to anticipate that a court would later hold the ordinance unconstitutional." *Michigan v. DeFillippo*, 443 U.S. 31, 37-38 (1979). Accordingly, even after considering Neiman's affirmative defense, there was probable cause for his arrest.

---

[12]     Neiman's references to the Pennsylvania Supreme Court's decision in *Corman*, which found that the school-wide mandate was void, are either misleading or misplaced. *See* Am. Compl. ¶ 42 (alleging that the day after Neiman's interaction with Officer DeLozier at the WASD playground and before criminal charges were filed against him, the Pennsylvania Supreme Court ruled that the state-wide mandate requiring facemasks in schools was void *ab initio*, and citing *Corman v. Acting Sec'y of the Pa. Dep't of Health*, 266 A.3d 452, 455 (Pa. 2021)). The *Corman* decision, which concluded that the Acting Secretary of Health exceeded her authority in issuing the school-wide mandate on August 31, 2021, had no impact on Neiman's exclusion from the Wyomissing Hills Elementary Center on August 30, 2021. It also had no impact on WASD's no-trespass letter dated September 1, 2021, because the school-wide mandate was not effective until September 7, 2021. Moreover, the WASD's no-trespass letter is not based solely on Neiman's refusal to wear a facemask, but on his repeated refusal to leave the building after being asked to do so.

The Amended Complaint has therefore failed to state a Fourth Amendment violation and such claims are dismissed with prejudice.[13]

**C.      The Fourteenth Amendment claims are dismissed with prejudice.**

The Amended Complaint does not specify whether the Fourteenth Amendment claim is based on a substantive or procedural due process violation, but Neiman's opposition briefs clarify he is bringing only a procedural due process claim.  To the extent that even the nature of the claim is unclear from the Amended Complaint, the allegations fail to state a claim.  *See Washington v. Hanshaw*, 552 F. App'x 169, 174 (3d Cir. 2014) (concluding that the plaintiff, who merely recited the elements of a procedural due process claim without explaining what process he was owed and how that process was denied, failed to establish the defendant's conduct deprived him of any constitutionally protected procedural due process right).

Additionally, to the extent Neiman claims that his due process right to challenge the face-mask policy was denied when he was prevented from showing an exemption, it was only denied, if at all, by the WASD, not by any named Defendant.  Defendants responded to calls from the school that Neiman was trespassing and the due process they owed to Neiman related to the criminal investigation and charges.  However, "a pretrial deprivation of liberty that is related to a criminal proceeding is addressed not through procedural due process, but the Fourth Amendment."  *Crouse v. S. Leb. Twp.*, 668 F. Supp. 2d 664, 674 (M.D. Pa. 2009).  There was no Fourth Amendment violation, as previously discussed, because the detention by the Wyomissing

---

[13]      Given the factual allegations, any amendment would be futile.  *See Grayson*, 293 F.3d at 108 (holding that leave to amend need not be granted if an amendment would be futile).  Moreover, Neiman, through counsel, previously amended his complaint after discussion with defense counsel about defects in the complaint.  *See Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993) (holding that leave to amend may be denied "based on bad faith or dilatory motives, truly undue or unexplained delay, *repeated failures to cure the deficiency by amendments previously allowed, or futility of amendment*").

police was supported by reasonable suspicion and the charges by the West Reading police were

supported by probable cause.  Moreover, Neiman admits that he received timely notice of the

charges and was afforded an opportunity to be heard at pretrial hearings and at trial.  *See*

*Popichak v. Peurifoy*, No. 23-CV-3678, 2023 U.S. Dist. LEXIS 185061, at *19 (E.D. Pa. Oct.

16, 2023) ("The procedural aspect of the Due Process Clause guarantees the availability of

certain procedural mechanisms, typically the right to notice and an opportunity to be heard

before the government can deprive an individual of a liberty or property interest.").

Accordingly, Neiman received all procedural due process due to him from Defendants and the

claim is dismissed with prejudice.[14]

### D.      The First Amendment claims are dismissed with prejudice.

The exact contours of Neiman's First Amendment claim are not clear.  The Amended

Complaint merely alleges that: (1) Neiman's detention by Officer Moser prevented him from

going in the school to speak with someone about his disability and his rights, and (2) Neiman's

detention and arrest by Officer DeLozier violated his rights under the First Amendment.

This claim fails for at least three reasons.

First, Neiman fails to plead any factual allegations showing how his free speech was

violated.  As to his interaction with the Wyomissing police on August 30, 2021, Neiman does not

allege that he tried to go back into the school after police arrived or that the officers restricted

him from speaking with anyone at the school.  Furthermore, Neiman was not detained by the

Wyomissing police until he asked to leave, which terminated any unspoken intent of Neiman to

go back into the school.  The Amended Complaint therefore fails to identify any speech or

---

[14]      Leave to amend would be futile.  *See* footnote 13, *supra*

expressive conduct[15] restricted by Officer Moser.  The Amended Complaint also fails to identify

whatsoever any speech or expressive conduct restricted by Officer DeLozier's actions.

Second, Neiman's First Amendment claim is based solely on his alleged detentions and

arrest, but "not every Fourth Amendment claim triggers a coordinate First Amendment claim."

*Tsitsoulis v. Twp. of Denville*, No. 2:07-4544, 2009 U.S. Dist. LEXIS 119369, at *33 (D.N.J.

Dec. 23, 2009) ("The two constitutional claims are distinct.").[16]  "It takes more to make a First

Amendment claim than merely being arrested on space that may be a public forum."  *Id.*  The

Amended Complaint fails to allege anything more.  The allegations do not show that Neiman

was arrested or detained for exercising his First Amendment rights; rather, the allegations show

he was arrested or detained for trespassing on school property.  *See Holman v. City of York*, 564

---

[15]     "Amid valid government-mandated health and safety measures, refusing to wear a face mask is not expressive conduct protected by the First Amendment."  *Falcone v. Dickstein*, 92 F.4th 193, 213 (3d Cir. 2024).

[16]     In *Tsitsoulis*, the plaintiff was divorced and had a family-court order determining where he could pick up his son, which the school (incorrectly) understood as precluding pickup on school premises.  *See Tsitsoulis*, 2009 U.S. Dist. LEXIS 119369, at *2-8.  On several occasions, the plaintiff went to the school to pick up his son, but was told to leave by school personnel.  The school principal then sent the school superintendent an email stating that if the plaintiff returned to the school, a complaint for trespass would be filed against him.  Thereafter, the plaintiff went to the school to pick up his son.  The police were contacted and told the plaintiff that if he attempted to pick up his son at school again, he would be arrested.  A week later, the plaintiff returned to the school to pick up his son.  After he refused to leave, the plaintiff was arrested for trespassing.  The arresting officer was aware of the email between the school principal and superintendent.  The plaintiff initiated a civil action against the police, the township, and school officials.  The *Tsitsoulis* court determined that the plaintiff failed to state a claim under the Fourth Amendment because, even though the school misread the family court order about where the plaintiff could pick up his son, the officers had probable cause for the arrest based on the principal's termination of the plaintiff's right to be on school property.  *Id.* at *17-26.  The court also rejected the plaintiff's First Amendment claim, which was found to be coextensive with the Fourth Amendment claim.  *Id.* at *30-31.  The court explained that the contours of the claim were unclear.  *Id.*  "To the extent his claim is characterized as an assembly right, Plaintiff has failed to explain who the participants in the assembly were and what persons (if any) were its target audience apart from the government."  *Id.* at *34.  "To the extent Plaintiff's claim is characterized as a free expression claim, Plaintiff has failed to articulate what he was attempting to communicate, to whom, and for what purposes."  *Id.* at *35.

F.3d 225, 228-29 (3d Cir. 2009) (concluding that Holman failed to demonstrate a cognizable First Amendment violation where he had no reason to fear[17] police interference with his first amendment rights and "was only arrested when he trespassed on [another's] property"). "The First Amendment does not guarantee a right to commit defiant trespass." *Armes*, 706 F. Supp. at 1166.

Third, to the extent the Amended Complaint may be construed as alleging a retaliatory arrest claim in violation of the First Amendment, Neiman fails to demonstrate the absence of probable cause for his detention and arrest. *See Nieves v. Bartlett*, 139 S. Ct. 1715, 1724 (2019) ("The plaintiff pressing a retaliatory arrest claim must plead and prove the absence of probable cause for the arrest."). Officer Moser had probable cause to arrest Neiman for trespassing because Neiman had been repeatedly told that he was not allowed in the school building without a facemask but entered anyway and then failed to immediately leave after being told to do so. *See Commonwealth v. Detwiler*, Nos. 390 MDA 2023, 391 MDA 2023, 392 MDA 2023, 2024 Pa. Super. Unpub. LEXIS 30, at *5-6 (Jan. 4, 2024) (affirming the defiant trespass conviction where the defendant, after refusing to comply with the mask mandate, was told to leave the school but refused). Officer DeLozier had probable cause to arrest Neiman for trespassing because Neiman had been told by the WASD that he was restricted from all WASD property, which included the WASD playground, but was on WASD property. *See Corbett v. Goode*, No. 87-7360, 1990 U.S. Dist. LEXIS 15641, at *10-11 (E.D. Pa. Nov. 19, 1990) (concluding that there was probable cause to arrest Corbett for defiant trespass where she admitted that she

---

[17]     "In order to plead a retaliation claim under the First Amendment, a plaintiff must allege: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Indep. Twp.*, 463 F.3d 285, 296 (3d Cir. 2006).

entered a place (the parking lot) as to which notice against trespass was given her several times by actual communication).  Neiman's disagreement with the school's actions in telling him to leave the Wyomissing Hills Elementary Center and thereafter restricting him from being on any WASD property is not relevant to the probable cause determination.  *See id.* at *11-13 (explaining that whether Corbett believed she had a right to be on the parking lot "is not relevant to the issue of probable cause because it is the reasonableness of the police officer's action which is the focus of the inquiry" and a "police officer reasonably could have believed that a person who was warned at least twice not to step into an area, and who nevertheless stepped into the area, did so knowing that she was neither privileged nor licensed to enter the prohibited area"); *Tsitsoulis*, 2009 U.S. Dist. LEXIS 119369, at *2-8.  Any First Amendment retaliation claim is therefore without merit.  *See Falcone v. Dickstein*, 92 F.4th 193, 210. 213 (3d Cir. 2024) (affirming dismissal of the retaliation claim because, *inter alia*, the police had probable cause to arrest the plaintiff for trespassing on school property when the plaintiff refused to wear a facemask at a school board meeting in violation of a New Jersey mandate); *Armes*, 706 F. Supp. at 1163 (dismissing the plaintiffs' claim that their arrests for defiant trespass were unlawful and constituted a violation of their first amendment free speech rights because, *inter alia*, the arresting officers had probable cause to believe that the plaintiffs had committed the offense of defiant trespass).

For all these reasons, the First Amendment claim is dismissed with prejudice.[18]

---

[18]    Leave to amend as to any named Defendant would be futile.  *See* footnote 13, *supra*
Notably, neither the WASD, nor any school employee or official, is named as a defendant.  Any suggestion that the WASD facemask policy, the no-trespass ban, or school personnel's directions to leave the Wyomissing Hills Elementary Center on August 30, 2021, violated Neiman's First Amendment rights is irrelevant to Neiman's claims against the Wyomissing Defendants and the West Reading Defendants.  Moreover, because the Wyomissing Hills Elementary Center was not open to the public for indiscriminate use, the school had more

E.      **The Wyomissing and West Reading Boroughs are dismissed with prejudice.**

In the absence of a constitutional violation, any claim against the Boroughs based on

*Monell* liability necessarily fails.  *See City of L.A. v. Heller*, 475 U.S. 796, 799 (1986) ("If a

person has suffered no constitutional injury at the hands of the individual police officer, the fact

that the departmental regulations might have authorized the use of constitutionally excessive

force is quite beside the point."); *Brown v. Pa. Dep't of Health Emergency Med. Servs. Training

Inst.*, 318 F.3d 473, 482 (3d Cir. 2003) ("For there to be municipal liability, there still must be a

violation of the plaintiff's constitutional rights.").  Moreover, even if Neiman had sufficiently

pled a violation of his constitutional rights, he fails to sufficiently allege that Borough policy

caused his constitutional harm.  Rather, Neiman complains about the allegedly discriminatory

policy of the WASD requiring facemasks, restricting him from all WASD property, and not

recognizing his medical exemption to the face-mask policy.  Importantly, however, the WASD is

not a named defendant.  The WASD is a separate entity from the municipalities where it is

located.  *See Cohen v. Sch. Dist. of Phila.*, No. 91-4484, 1992 U.S. Dist. LEXIS 4794, at *4

---

control over the speech.  *See Walker-Serrano v. Leonard*, 168 F. Supp. 2d 332, 345-46 (M.D. Pa.
2001) ("As the school facilities have not been opened for indiscriminate use by the public, this is
a nonpublic forum, and thus the school has more control over the speech than if it was a public
forum."); *Gregoire*, 674 F. Supp. at 176-77 (holding that "the First Amendment does not give
any individual or group the right to use public facilities as a speech forum unless those facilities
have already been opened as such a forum by having already been made accessible to similar
individuals or groups").  Moreover, the facemask policy was a content-neutral time, place, and
manner regulation narrowly tailored to serve the significant government interest of protecting the
safety of students and staff.  *See Walker-Serrano*, 168 F. Supp. 2d at 345-46.  The no-trespassing
bans were also lawfully imposed conditions.  *See Corbett*, 1990 U.S. Dist. LEXIS 15641, at *15
(concluding that "the 'no trespassing' policy is a 'lawful condition' under the state statute and
does not violate the First Amendment free speech rights of pro-life protestors").  Neiman
therefore also fails to show that his First Amendment rights were violated by the school's
actions.  *See Gregoire*, 674 F. Supp. at 176 ("Indeed, the plaintiffs must make a showing that
their free speech will be violated; otherwise, the intrusion of the courts is improper into the
management of school property.").

(E.D. Pa. Apr. 9, 1992) (recognizing a school district as a separate entity from a municipality).

Consequently, neither the Wyomissing nor West Reading Boroughs may be liable based on the

actions or policies of the WASD.[19]

Neiman's suggestion that the Boroughs are liable because their police chiefs adopted the

allegedly[20] discriminatory policy of the WASD by agreeing to enforce the no-trespass ban is also

unavailing.  Despite Neiman's conclusory allegation that the Wyomissing Borough police chief

is the ultimate policy maker for the Wyomissing Police Department and that he communicated

his policy with the Chief of Police of the West Reading Police Department, a borough police

chief is not a final policymaker under Pennsylvania law.  *See Titterton v. Jenkintown Borough*,

---

[19]     Neiman's complaints that the school failed to accommodate his disability by not
recognizing his exemption to the face-mask policy therefore also have no bearing on the liability
of Defendants.  Notably too, Neiman has not brought an ADA claim.  Even if he had, the
allegations are insufficient to show that he had a disability because there is no suggestion that
Neiman's PTSD limits any major life activity.  *See Nicholson v. W. Penn Allegheny Health Sys.*,
297 F. App'x 157, 159 (3d Cir. 2008) (concluding that the plaintiff failed to establish a disability
because the allegations were insufficient to show that her PTSD substantially impaired her
ability to perform major life activities).  Neiman's suggestion that he has a letter from a
psychiatrist verifying his diagnosis and disability is unfounded.  *See* Am. Compl. ¶ 16.  The
letter from his psychiatrist does not state that Neiman is disabled.  *See* Am. Compl. ¶ 58 and Ex.
A.  Rather, it simply states that Neiman is exempt from a face covering and that, generally, a
person is exempt if wearing a face covering would either cause or exacerbate a medical
condition, including "respiratory issues, . . . a mental health condition *or a disability*."  *Id.*
(emphasis added).  Because the Boroughs cannot be held liable for any allegedly retaliatory acts
by the WASD, Neiman's allegations that the WASD Superintendent's no-trespass letter and
insistence that Neiman be prosecuted for the defiant trespass charges were acts of retaliation are
also not relevant.  *See also Albert v. Weaver*, No. 1:05-CV-2380, 2007 U.S. Dist. LEXIS 59817,
at *23-24 (M.D. Pa. Aug. 15, 2007) (finding that because there was probable cause to cite Albert
for defiant trespass, his First Amendment retaliatory-prosecution claim fails as a matter of law).
[20]     The WASD no-trespass directive was not based solely on Neiman's failure to comply
with the face-mask requirement, but also on Neiman's "failure to promptly leave the building per
the direction provided to you by the District's Police Officer."  *See* Am. Compl. ¶ 30 and Ex. D.
*See also Herring v. Chichester Sch. Dist.*, No. 06-5525, 2008 U.S. Dist. LEXIS 11464, at *36-37
(E.D. Pa. Feb. 14, 2008) (reasoning that if the school district employees, who issued a no-
trespass notice to the plaintiff for refusing to wear a face mask, were acting in good-faith
fulfillment of their responsibility to keep the school safe, there would be no liability).

No. 20-5869, 2021 U.S. Dist. LEXIS 125957, at *24 (E.D. Pa. July 7, 2021) (concluding that

"the Borough Code applies to determine whether its police chief is a policymaker" and that

because the "Borough Code gives the mayor 'full charge and control of the chief of police and

police force'" the police chief is not a policymaker (quoting 8 Pa. Stat. Ann. § 1123.1(a)); *Bird v.*

*Borough of Moosic*, No. 3:18-CV-2289, 2020 U.S. Dist. LEXIS 34236, at *14 (M.D. Pa. Feb. 28,

2020) (concluding that "whether a borough police chief is a final policymaker is a legal rather

than a factual question, and as a matter of Pennsylvania state law, a borough police chief is not a

final policymaker" (internal citation omitted)).  Accordingly, neither chief's decision to enforce

the WASD no-trespass ban is sufficient to impose liability on their respective Borough.  *See*

*Pembaur*, 475 U.S. at 483 (holding that "municipal liability under § 1983 attaches where -- and

only where -- a deliberate choice to follow a course of action is made from among various

alternatives by the official or officials responsible for establishing final policy with respect to the

subject matter in question"); *Dubas v. Olyphant Police Dep't*, No. 3:11cv1402, 2012 U.S. Dist.

LEXIS 56568, at *16 (M.D. Pa. Apr. 20, 2012) (dismissing claims against the Borough that were

premised on the incorrect contention that the chief of police was a final policy maker).

 All claims against the Wyomissing Borough and the West Reading Borough are

dismissed with prejudice.[21]

### F.   Officer A is dismissed with prejudice.

A district court may sua sponte dismiss a complaint or claims therein against a non-

moving defendant "provided that the complaint affords a sufficient basis for the court's action."

*See Bryson v. Brand Insulations, Inc.*, 621 F.2d 556, 559 (3d Cir. 1980).  However, certain

protections are guaranteed to the plaintiff.  *See id.*  "A court may not dismiss a complaint on the

---

[21]        Leave to amend would be futile.  *See* footnote 13, *supra*

pleadings unless no set of facts could be adduced to support the plaintiff's claim for relief." *Id.* (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). For the reasons set forth above, no set of facts could support Neiman's claims against Officer A.

Moreover, "case law is clear that an action cannot be maintained solely against Doe defendants." *Baker v. United States*, 642 F. App'x 147, 152 (3d Cir. 2016) (internal quotations omitted). Once the court dismisses all of the claims against the named defendants, claims against any Doe defendants cannot proceed. *See Phillips v. Superintendent Chester SCI*, 739 F. App'x 125, 131 (3d Cir. 2018). Because all named Defendants have been dismissed in the above-captioned action, Officer A is dismissed with prejudice. *See Smith v. Creative Res.*, No. 97-6749, 1998 U.S. Dist. LEXIS 18545, at *3 n.2 (E.D. Pa. Nov. 20, 1998) (dismissing the Doe defendants sua sponte because all named defendants were dismissed and the complaint was devoid of any allegations against them); *Lowe v. Lancaster Cty.*, No. 5:20-cv-1413, 2020 U.S. Dist. LEXIS 229977, at *19-20 (E.D. Pa. Dec. 8, 2020) (concluding that "because all claims will be dismissed, the case may not proceed as to Defendant Doe alone").

## V.   CONCLUSION

Neiman stipulates that his claims against Officer DeLozier, Officer Moser, and Officer A are in their official capacities only. However, these official-capacity claims are duplicative of Neiman's claims against the West Reading and Wyomissing Boroughs where these officers are employed. The claims against the officers are therefore redundant, and Officer DeLozier and Officer Moser are dismissed with prejudice. Neiman's Fourth Amendment claims are also dismissed with prejudice because the detention and/or arrest of Neiman was justified. The First Amendment claim, which is based on the alleged Fourth Amendment violation, is dismissed with prejudice because there are insufficient allegations that any speech was restricted or that

Neiman's detention or arrest was not supported by probable cause.  Having dismissed all claims

against the West Reading and Wyomissing Boroughs with prejudice, Officer A is also dismissed

with prejudice.

A separate order will be issued.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge